## GRIFFIN v. PENNSYLVANIA STEEL CO.

(Supreme Court, Appellate Division, Second Department. January 14, 1916.)

1. MASTER AND SERVANT ☞204, 228—INJURIES TO SERVANT—LIABILITY OF MASTER—DEFENSES.

   The Labor Law (Consol. Laws, c. 31) does not impose absolute liability on the master, nor does it preclude him from the defenses of assumption of risk, or of contributory negligence, or of any other defense available at common law, not inconsistent with the statute.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–516, 670, 671; Dec. Dig. ☞204, 228.]

2. TRIAL ☞140—CREDIBILITY OF WITNESSES—QUESTIONS FOR JURY.

   The credibility of witnesses is for the jury.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ☞140.]

3. MASTER AND SERVANT ☞289—INJURIES TO SERVANT—DEFENSES—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.

   Evidence in a servant's action for injuries held insufficient to show contributory negligence as a matter of law.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ☞289.]

4. MASTER AND SERVANT ☞286—INJURIES TO SERVANT—DEFENSES—EVIDENCE—SUFFICIENCY.

   Evidence in an action by a servant for injuries held insufficient to show that the master was free from negligence as a matter of law.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

5. MASTER AND SERVANT ☞238—INJURIES TO SERVANT—LIABILITY—CONTRIBUTORY NEGLIGENCE.

   Where a servant was injured in adjusting a scaffolding hung from the top of a bridge, the fact that it was dangerously situated, and that he helped in the adjustment of it, did not necessarily bar his recovery.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 743–748; Dec. Dig. ☞238.]

6. MASTER AND SERVANT ☞278—INJURIES TO SERVANT—LIABILITY OF MASTER—NEGLIGENCE—EVIDENCE.

   Evidence held insufficient to show that a master was negligent in permitting his servant to adjust a scaffolding suspended by ropes from the top of a bridge, in doing which the servant was injured.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Queens County.

Action by Joseph Griffin against the Pennsylvania Steel Company. From a judgment for plaintiff, and an order denying defendant's motion for new trial, defendant appeals. Judgment and order affirmed.

Argued before JENKS, P. J., and CARR, MILLS, RICH, and PUTNAM, JJ.

Clayton J. Heermance, of New York City, for appellant.

Thomas J. O'Neill, of Yonkers (Leonard F. Fish, of New York City, on the brief), for respondent.

JENKS, P. J.  A servant has recovery against his master, in that the master did not fulfill the Labor Law to furnish a safe scaffold. The master was building a bridge over a city street. The scaffold was suspended from the top of the bridge by two ropes, one at either end. It had been used for half a day by the servant as a riveter, when, in consequence of his complaint to his foreman that such ropes were worn, and not safe, the servant and a fellow servant were directed to select and to substitute new ropes. They did so. The servant, looking from the top of the bridge, saw that the scaffold as suspended by the servant and his fellows with the new ropes was not level. Thereupon the servant descended on the outside of the body of the bridge for 8 feet, and stood upon a flange 6 or 8 inches wide, and, holding onto one rope, attempted to level the scaffold by change or readjustment of the ropes. When thus at work, the scaffold suddenly shifted, one end of it went down, so that the scaffold changed from horizontal towards perpendicular, the end that fell dragged out the other end close to the servant, and jerked a suspension rope out of his hand. The servant fell to earth, some 20 feet below, and was severely injured. The scaffold shifted because one of the suspension ropes slipped off an end of the scaffold. The servant contended, with sufficient proof in accord to sustain findings, that this could not have been if there had been a bolt at the end of the scaffold to hold the ropes, or if there had been two suspension ropes at each end of the scaffold, instead of one.

The learned court charged the jury, without exception, that there was no evidence that if that scaffold had been once adjusted, and was hanging there finished and completed for the use of laboring men, it was unsafe for that purpose; it further charged, without exception, that if it was a part of the duty of the servants to swing the scaffold, and to adjust it, then the master rested under its obligation to furnish a scaffold which would be safe for that purpose, and that the jury could find the master liable if they concluded that it was not thus safe; and, as the master had pleaded contributory negligence, the court submitted that question also to the jury. It follows, then, that the jury determined that the scaffold was unsafe for the adjustment as attempted by the servant, and that he was not chargeable with contributory negligence.

[1] The Labor Law does not "impose absolute and irresistible liability" upon the master, nor does it preclude him from the defenses of assumption of risk or of contributory negligence, nor of any other defense available at common law not inconsistent with that statute. Gom-

bert v. McKay, 201 N. Y. 31, 94 N. E. 186, 42 L. R. A. (N. S.) 1234. Although the scaffold must be safe, suitable, and proper, as the master is not made an insurer, its obligation in this case must be considered with reference to the method of adjustment taken by the servant. The scaffold was a simple instrumentality, made of two boards 12 feet long, nailed down upon cleats at either end, which served to secure the suspension ropes. Evidently it had been drawn up to the top of the bridge when the new suspension ropes were substituted. The fault was seen by the plaintiff from the top of the bridge. It would seem physically possible that the suspension ropes might have been made equal by manipulation of them from above, or that such equalization might have been made after drawing up the scaffold again to the top of the bridge.

Now, if the master had shown that another method (or other methods) comparatively safe was open to the servant, and that such method was rejected by him for a method which was hazardous, and that he freely chose the latter, then the master might well attack the judgment and the order. The master undertook to establish that it would have been equally practicable to draw up the scaffold to the top of the bridge and there to readjust it. It sought such proof from witnesses called by it who had been fellow servants of the plaintiff, who were on friendly terms with him, and who had been subpœnaed by him. These witnesses evidently disappointed the master, because one of them testified that he "did not think" the method suggested by the master could have been used, and the other, while stating that it was not impossible, nevertheless qualified his answers to such a degree as left the master without clear proof to support its proposition.

[2-4] The credibility of the witnesses was for the jury. In the face of such condition of proof, we cannot say that the master made out its proposition, so as to establish either its freedom from negligence or contributory negligence as matters of law. It is clear enough that the servants were under pressure from their immediate foreman to do a certain amount of work at riveting within a specified time, and that for that reason the plaintiff and his fellows, hurrying to adjust the scaffold, took the quickest method. The master did not attempt to support its theory of safer method by any further proof save inquiry from its foreman, Roberts, as to custom. But when the learned court, under objection, ruled out the inquiry, the ruling was not excepted to.

[5] The circumstance that the plaintiff helped in the adjustment, or undertook it, did not necessarily bar his recovery. Warren v. Post & McCord, 128 App. Div. 572, 112 N. Y. Supp. 960, affirmed 198 N. Y. 624, 92 N. E. 1106.

[6] We think that under the law of this case, as stated by the court and accepted by the parties, the proof was sufficient to warrant a conclusion that the master was negligent in the construction of the scaffold, and therefore that the judgment and order must be affirmed, with costs. All concur.